DECISION AND JUDGMENT ENTRY
This matter is before the court on appeal and cross-appeal from a judgment of the Lucas County Court of Common Pleas which found that appellants' counsel, Joseph W. Westmeyer, Jr., engaged in frivolous conduct.
These appeals stem from a dispute involving the removal of appellants Paul and Cynthia Lambrecht's fence which encroached upon appellees' property. The undisputed facts are as follows. On March 31, 1995, appellants purchased the property located at 7224 West Sylvania Avenue from Norma L. Donnelly. On October 28, 1995, appellee and then adjacent property owner, Jefferson R. Sampson ("Sampson"), removed a two hundred eighty foot section of appellants' white PVC fence which ran along the east side of appellees' property. Shortly thereafter, appellees sold their property.
On February 27, 1996, appellants filed a complaint against appellees and Donnelly alleging, inter alia, adverse possession and requesting damages associated with the fence and its removal. On April 20, 1998, appellants voluntarily dismissed their complaint, without prejudice, because appellants, as required under the doctrine of adverse possession, failed to name the current property owners, Mark and Jackie Opperman.Thereafter, appellees filed a motion for sanctions, including attorney fees pursuant to R.C. 2323.51. The trial court agreed, finding that "[t]he present owners must be part of this action because this Court's ultimate ruling could take land away from them."
On June 30, 1998, appellants refiled their action against appellees. The claims against appellees were unchanged from the first action, and the Oppermans were added as defendants. The trial court denied appellees' and the Oppermans' motions for summary judgment. Pursuant to a settlement agreement, on July 23, 1999, appellants dismissed the Oppermans from the lawsuit with prejudice.
Following the Oppermans' dismissal, appellees filed a motion for a directed verdict based, as in the prior lawsuit, on the fact that appellants could not maintain an adverse possession claim absent the current owners of the property. The motion was granted and on September 28, 1999, the parties signed a judgment entry which stated, in part: "all Plaintiffs' claims in Counts 1, 2 and 4 against Defendant Sampson are based upon adverse possession * * *."
Reminiscent of the first action, appellees filed a motion for attorney fees pursuant to R.C. 2323.51 and Civ.R. 11 sanctions. A hearing was held on the motion on December 22, 1999. Thereafter, on April 26, 2000, the trial court found that appellants' counsel engaged in frivolous conduct and awarded attorney fees. This appeal followed.
Appellants raise the following assignments or error:
 "1.) THE TRIAL COURT ERRED IN FINDING PLAINTIFFS/APPELLANTS' COUNSEL ENGAGED IN FRIVOLOUS CONDUCT.
 "A. Plaintiff/Appellants' underlying lawsuit was not brought to harass or maliciously injury [sic] Defendant/Appellee Sampson.
 "B. Plaintiff/Appellants' cause of action for conversion was set forth in their Complaint and existed for the duration of the case.
 "2.) IF THE TRIAL COURT DID FIND PLAINTIFFS/APPELLANTS ENGAGED IN FRIVOLOUS CONDUCT THE TRIAL COURT ERRED IN DETERMINING THE REASONABLENESS AND AWARD OF DEFENDANT/APPELLEE'S ATTORNEY FEES."
Appellees, in their cross-appeal, raise the following sole "alternative" assignment of error:
 "CROSS-APPELLANT'S ALTERNATIVE ASSIGNMENT OF ERROR "I. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO FIND THAT APPELLANT PAUL LAMBRECHT ENGAGED IN FRIVOLOUS CONDUCT DESPITE CREDIBLE UNREBUTTED EVIDENCE THEREOF"
We first note that pursuant to R.C. 2323.51(B)(1)[1], a court may award reasonable attorney fees to any party in a civil action adversely affected by frivolous conduct. An award under this statute is discretionary; consequently, a court's decision to impose sanctions will not be reversed absent an abuse of discretion. Shaffer v. Mease (1991),66 Ohio App.3d 400, 407. An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's judgment was unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1984), 5 Ohio St.3d 217.
An analysis of a claim under R.C. 2323.51(B) requires a determination of "whether an action taken by the party to be sanctioned constitutes `frivolous conduct,'" and "what amount, if any, of reasonable attorney fees necessitated by the frivolous conduct is to be awarded to the aggrieved party." Ceol v. Zion Indus., Inc. (1992), 81 Ohio App.3d 286,291. The initial determination of whether a party's conduct was frivolous requires a factual determination. Id. This is particularly true if a court must determine if conduct "serves merely to harass or maliciously injure another party to a civil action." R.C. 2323.51(A)(2)(a). The trial court has "the benefit of observing the entire course of proceedings and will be most familiar with the parties and attorneys involved." Ceol at 292. A trial court's finding that conduct was engaged in to harass or injure another party is entitled to substantial deference by a reviewing court. Id.
In their first assignment of error, appellants contend that the trial court erred when it determined that appellants' counsel engaged in frivolous conduct. Specifically, appellants argue that the case was not brought merely to harass or maliciously injure appellees; and that for the duration of the case, conversion had been a cause of action.
At the December 22, 1999 hearing on the motion for sanctions, the following evidence was presented. Appellee Jefferson Sampson testified that he did not speak with appellants or anyone purporting to represent them immediately prior to removing the fence. He indicated that on October 27, 1995, he received a copy of a facsimile ("fax") sent to his realtor from appellants' former attorney. The fax read, in part: "* * * Mr. and Mrs. Paul Lambrecht, request that Mr. Sampson save the removed fence portions and stack them on Mr. Lambrecht's property for his re-use." Sampson testified that beginning six months prior to taking the fence down, he repeatedly asked Lambrecht to remove it because he was selling his property. He stated that the fence was eighteen feet off the property line.
During Lambrecht's testimony, he was questioned regarding certain letters, one of which included the fax quoted above. Another letter was written to Lambrecht from his former attorney, dated October 26, 1995. It states, in part:
 "If you wanted to insure that the fence could be reused after it is taken out, I recommend that you be responsible for the removal, rather than Sampson as he would not have a legal duty to preserve the fence in its original condition.
 "You were inquiring about stopping the removal of the fence. Assuming the survey is correct, Mr. Sampson would be within his rights to remove the fence that is on his property * * *.
 "* * *. At this juncture I cannot advise as to whether you have a claim for adverse possession without further factual and legal investigation. Additionally, a survey would need to be done to determine what the true boundaries are and what areas are being claimed by adverse possession. You stated you did not want to incur the cost of a survey."
Lambrecht testified that he never gave permission to remove the fence. He indicated that he agreed to have a survey done when the weather warmed up and if it revealed that the fence was on Sampson's property he would have it removed.
As to the fax and letter, Lambrecht testified that he told his former attorney that he did not want the fence removed, and that he received the letters after the fence was torn down. He stated that on the day that Sampson removed the fence, he left the property to avoid a confrontation.
Lambrecht stated that at the time he purchased the home, the fence was listed on the purchase agreement. Lambrecht described that the entire area outside his fence was overgrown. He also stated that the fence was erected sometime prior to 1975.
Appellants' attorney, Joseph J. Westmeyer, Jr., testified that he could not recall when he first received the file from appellants' former attorney, which also included the letters. He also did not know whether he had contacted the Lambrechts' former attorney prior to commencing the first lawsuit. Westmeyer indicated that he believed there was a viable claim for conversion because "the rightful owner of the property was the Lambrechts and their property was taken by another and they were damaged as a result."
When questioned about the trial court's September 28, 1999 judgment entry, which set forth that the only cause of action was adverse possession, Westmeyer stated that he signed the document out of courtesy to the court and did not agree with its contents. He testified that he did not appeal the judgment because his clients "had had enough."
On April 26, 2000, the trial court issued its judgment entry in which it awarded appellees' attorney fees in the amount of $8,048.70. The court did not find a Civ.R. 11 violation. The judgment entry states, in part:
 "[T]his court has made clear that any claim against defendant must be premised on a successful adverse possession claim against the `current' owners of the real estate. Unless the trier of fact found the fence to be on the `property' of plaintiff, there could be no award of damages. This logic from the Court prompted plaintiff to dismiss the case when it was first set for trial. It was then refiled. However, prior to the second date for trial, plaintiff dismissed the then property owner. The Court understands why the plaintiff took that action, but it still believes that without the `property' owner in the action, the action must fail. The Court never gave plaintiff any other impression. Surely, plaintiff knew what the Court would do."
R.C. 2323.51 (A)(2) defines "frivolous conduct" as either of the following:
 "(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal.
 "(ii) It is not warranted under existing law and, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law."
Upon careful review of the facts of this case, we cannot say that the trial court abused its discretion when it found that appellants' counsel engaged in frivolous conduct. The record, in particular the December 22, 1999 hearing transcript, supports the findings made by the trial court. Bearing in mind the deference this court must give to the trial court's decision, Ceol v. Zion Indus, Inc., 81 Ohio App.3d at 292, we find appellants' first assignment of error not well-taken.
In their second assignment of error, appellants alternatively argue that the trial court erred in determining the reasonableness of the attorney fees awarded. Appellants contend that the award should be limited to only those fees which were necessarily incurred as a result of the frivolous conduct. In more precise terms, appellants claim that the attorney fees award should only include those incurred after July 23 1999, when the Oppermans were dismissed from the lawsuit.
When a trial court finds that a party has engaged in frivolous conduct, it may award reasonable attorney fees incurred in the action. R.C. 2323.51(B). A decision as to the amount of attorney fees awarded, if any, is within the discretion of the trial court and will not be reversed absent an abuse of discretion. Wiltberger v. Davis (1996),110 Ohio App.3d 46, 52.
As to imposing sanctions, the trial court stated: "Defendant should not have had to continue to proceed with his defense and continue to pay his counsel." Contrary to the assertions of appellees, there is no indication that the trial court relied on the fact that Westmeyer had been sanctioned previously or on the letters generated by appellants' former attorney (referenced above.) The trial court's judgment clearly indicates that the award is based upon the fact that the lawsuit continued after the current property owners were dismissed. Thus, while we find that the trial court did not abuse its discretion in awarding attorney fees, we find that the amount awarded was in error.
During the hearing on the matter, appellees submitted into evidence a list of the charges incurred in defense of this action. The court agrees that the award should be limited to the charges incurred after July 23, 1999. Based upon our calculation, the proper amount to be awarded to appellees is $5,135. Accordingly, appellants' second assignment of error is well-taken.
Because we have reduced the amount of the attorney fees awarded to appellees, we must now address their "alternative" cross-assignment of error which avers that the trial court abused its discretion when it failed to find that appellant, Paul Lambrecht, engaged in frivolous conduct. We disagree. The hearing transcript does not establish that Lambrecht gave Sampson permission to remove the fence. Lambrecht also testified that the fence was listed on the purchase agreement and that there was overgrowth surrounding the outside of the fence. Accordingly, we find that appellees' cross-assignment of error is not well-taken.
On consideration whereof, we find that substantial justice was not done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed in part and reversed in part. Pursuant to App.R. 12(B), this court reverses the part of the trial court's judgment that awarded appellees attorney fees in the amount of $8,048.70 plus interest, and instead finds that appellees are entitled to attorney fees in the amount of $5,135, plus interest. Court costs of this appeal are assessed to appellees.
 __________________ PIETRYKOWSKI, P.J.
 Melvin L. Resnick, J., James R. Sherck, J., Mark L. Pietrykowski,P.J., CONCUR.
[1] R.C. 2323.51(B)(1) provides, in part:
 "* * * [A]t any time prior to the commencement of the trial in a civil action or within twenty-one days after the entry of judgment in a civil action * * *, the court may award court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal to any party to the civil action or appeal who was adversely affected by frivolous conduct. The award may be assessed as provided in division (B)(4) of this section."